# EXHIBIT A

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**CHRISTOPHER J. NEWMAN**                    *          **COPY**
3817 Salem Church Road
Baltimore, Maryland 21084                    *

                                             *

**MARY FRANCES NEWMAN**                       *
3817 Salem Church Road
Baltimore, Maryland 21084                    *


             Plaintiffs                      *

v.                                           *

                                             *     Case No.    24-C-00-003846

**MOTOROLA, INC.**                            *
7230 Parkway Drive
Hanover, Maryland 21076                      *
          **SERVE ON:**  Resident Agent
          The Corporation Trust             *
          300 E. Lombard Street
          Baltimore, Maryland 21202         *


and                                          *



**VERIZON MARYLAND INC.**                     *
A/K/A VERIZON WIRELESS,
A/K/A VERIZON                                *
Formerly Known As:
Bell Atlantic – Maryland, Inc.              *
1 East Pratt Street
Constellation Place                          *
Baltimore, Maryland 21202

          **SERVE ON:**  Resident Agent      *

1

Robert D. Lynd
1 East Pratt Street                        *
Constellation Place
Baltimore, Maryland 21202                  *


and                                        *


**BELL ATLANTIC CORPORATION**              *
A/K/A BELL ATLANTIC
1 East Pratt Street                        *
Constellation Place
Baltimore, Maryland 21202                  *
And/or
1095 Avenue of the Americas
New York, New York 10036                   *
          **SERVE ON:** State of Maryland

          Dept. of Assessment & Taxation   *

          301 W. Preston Street,  Room 801

          Baltimore, Maryland 21201        *

          Attn: Robert Cierkes

                                           *


and                                        *


**BELL ATLANTIC MOBILE, INC.**             *
A/K/A BELL ATLANTIC NYNEX,
A/K/A NYNEX                                 *
Formerly known as Bell Atlantic Nynex
Mobile, Incorporated                       *
1 East Pratt Street
Constellation Place                        *
Baltimore, Maryland 21202
And/or                                     *
180 Washington Valley Road
Bedminster, New Jersey 07921               *


2

    **SERVE ON:** Resident Agent
    The Corporation Trust     &ast;
    300 E. Lombard Street
    Baltimore, Maryland  21202  &ast;

and              &ast;

**SOUTHWESTERN BELL**     &ast;
**MOBILE SYSTEMS, INC.**
dba **Cellular One Washington/Baltimore** &ast;
A/K/A CELLULAR ONE
A/K/A CELLULAR ONE WASHINGTON/ &ast;
         BALTIMORE
7855 Walker Drive, Suite 100   &ast;
Greenbelt, Maryland 20770
    **SERVE ON:** State of Maryland &ast;
    Dept. of Assessment & Taxation
    301 W. Preston Street,  Room 801 &ast;
    Baltimore, Maryland 21201
    Attn: Robert Cierkes   &ast;

and              &ast;

**WASHINGTON/BALTIMORE**   &ast;
**CELLULAR LIMITED PA**
17730 Preston Road, Suite 100A  &ast;
Dallas, Texas 75252
    **SERVE ON:** State of Maryland &ast;
    Dept. of Assessment & Taxation
    301 W. Preston Street,  Room 80 &ast;
    Baltimore, Maryland 21201
    Attn: Robert Cierkes   &ast;

              &ast;

and              &ast;

**SBC COMMUNICATIONS INC.**
175 East Houston Street    &ast;
San Antonia, Texas  78205
    SERVE ON:    &ast;
    Resident Agent
    C.T. Corporation Systems &ast;

3

350 N. Saint Paul Street
Dallas, Texas 75201                     *

and
                                        *

**CELLULAR TELECOMMUNICATION**          *
**INDUSTRY ASSOCIATION**
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036                  *
      SERVE ON:
      Resident Agent             *
      John M. Townsend
      1775  I  Street  N.W. , Suite 600   *
      Washington, D.C. 20006


and                                     *


**TELECOMMUNICATION**                   *
      **INDUSTRY ASSOCIATION**
A/K/A TIA                               *
Washington, D.C
      SERVE ON:                  *
      Resident Agent
      Mathew T. Kranz            *
      1201 Pennsylvania Avenue, NW
      Suite 315                  *
      Washington, D.C. 20044
                                        *


and                                     *


**ABC CORPORATION**                     *
a presently unidentified entity or entities


Defendants                              *


\*   \*   \*   \*   \*   \*   \* \* \*   \*   \*   \*   \*   \*


## FIRST AMENDED COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiff, Christopher J. Newman and Plaintiff, Mary Francis Newman, by and through their attorneys, Joanne L. Suder and The Suder Law Firm, P.A., sues the above-captioned Defendants, MOTOROLA, INC., VERIZON MARYLAND, INC., A/K/A VERIZON WIRELESS, A/K/A VERIZON, BELL ATLANTIC CORPORATION, A/K/A BELL ATLANTIC, BELL ATLANTIC MOBILE, INC., A/K/A BELL ATLANTIC NYNEX, A/K/A NYNEX, SOUTHWESTERN BELL MOBILE SYSTEMS, INC., dba Cellular One Washington/Baltimore, A/K/A CELLULAR ONE, A/K/A CELLULAR ONE WASHINGTON/BALTIMORE, WASHINGTON/BALTIMORE CELLULAR LIMITED PA, SBC COMMUNICATIONS INC., CELLULAR TELECOMMUNICATION INDUSTRY ASSOCIATION, A/K/A CTIA, INC., A/K/A CTIA, TELECOMMUNICATION INDUSTRY ASSOCIATION, A/K/A TIA, and ABC CORPORATION, (hereinafter collectively referred to as "Defendants"), and in support states as follows:

1.    This is a civil action arising out of the manufacture and sale of cellular wireless hand held telephones (hereinafter referred to as "WHHPs"), the use of WHHPs, and injuries resulting there from. The WHHPs are not to be confused with cellular telephones and or other communication devices permanently mounted in automobiles, trucks, and other public and/or private vehicles of all sorts and descriptions. These are wireless cellular phones currently in wide spread use throughout the United States and the world which are held up to the user's ear and against the user's head thereby causing serious debilitating catastrophic injuries by genetic, cellular damage, cellular dysfunction and cancer to humans. The grounds for relief are: Strict Product Liability - Failure to Warn, Strict Product Liability, Negligence, Breach of Express

5

Warranty, Breach of Implied Warranty, Products Liability, Products Liability – Strict Liability,

Civil Tort Conspiracy, Civil Battery, Violation of Maryland Consumer Protection Act, Claim for

Damages and Loss of Consortium, Unfair and Deceptive Trade Practices, and Punitive Damages.

2.      The Venue is in Baltimore City, Maryland.

## PARTIES

3.      Plaintiff, Christopher J. Newman (hereinafter referred to as "NEWMAN") and

Plaintiff, Mary Francis Newman, his wife (hereinafter referred to as NEWMAN'S WIFE), are

residents of the State of Maryland, and were residents of Baltimore City during the period in

which a significant portion of the time the alleged acts and injuries occurred.

4.      At all times relevant to this Complaint, the Defendant, Motorola, Inc. (hereinafter

referred to as "MOTOROLA") is a corporation organized and existing under the laws of the State

of Delaware, and was authorized to do business under the laws of the State of Maryland, having

its principal place of business in the State of Maryland at 7230 Parkway Drive, Hanover,

Maryland 21076. At all times relevant herein, MOTOROLA, through its agents, distributors,

servants and/or employees engaged in the manufacturing business of electromagnetic equipment,

in particular, WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in

this State, as well as nationally and internationally.

5.      At all times relevant to this Complaint, the Defendant, Verizon Maryland Inc., A/K/A

Verizon Wireless, A/K/A Verizon, formerly known as, Bell Atlantic-Maryland, Inc. (hereinafter

referred to as "VERIZON") is a corporation organized and existing under the laws of the State of

Maryland, having its principal place of business at 1 East Pratt Street, Constellation Plaza,

6

Baltimore, Maryland 21202. At all times relevant herein, Verizon, through its agents, distributors, servants and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

6.     At all times relevant to this Complaint, the Defendant, Bell Atlantic Corporation, formerly known as, Bell Atlantic-Maryland, Inc., A/K/A Bell Atlantic, (hereinafter referred to as "BELL ATLANTIC") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 1 East Pratt Street, Constellation Plaza, Baltimore, Maryland 21202. At all times relevant herein, Bell Atlantic, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

7.     At all times relevant to this Complaint, the Defendant, Bell Atlantic Mobile, Inc., A/K/A Bell Atlantic Nynex, A/K/A Nynex, formerly known as Bell Atlantic Nynex Mobile, Inc. (hereinafter referred to as "BELL ATLANTIC MOBILE") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 180 Washington Valley Road, Bedminister, New Jersey 07921. At all times relevant herein, Bell Atlantic Mobile, through its affiliate corporations, companies, and partnerships, agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment

7

and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

8.     At all times relevant to this Complaint, the Defendant, Southwestern Bell Mobile Systems, Inc. dba Cellular One Washington/Baltimore, A/K/A Cellular One, A/K/A Cellular One Washington/Baltimore,  (hereinafter referred to as "CELLULAR ONE"), is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 7855 Walker Drive, Suite 100, Greenbelt Maryland 20770.  At all times relevant herein, Cellular One, through there agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

9.     At all times relevant to this Complaint, the Defendant, Washington/Baltimore Cellular Limited PA, (hereinafter referred to as "CELL ONE PA"), is a limited partnership organized and existing under the laws of the State of Maryland, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 7855 Walker Drive, Suite 100, Greenbelt, Maryland 20770.  At all times relevant herein, Cell One PA, through there agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

8

10.    At all times relevant to this Complaint, the Defendant, SBC Communications Inc. (hereinafter referred to as "SBC"), is a corporation and existing under the laws of the State of Delaware, having its principal place of business at 17 East Hoffman Street, San Antonia, Texas 78205, and SBC was conducting its business at all times relevant herein through its affiliate corporations, companies, and partnerships, and its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State.

11.    At all times relevant to this Complaint, the Defendant, Cellular Telecommunication Industry Association (hereinafter referred to as "CTIA"), is the trade association existing under the laws of the District of Columbia, having its principal place of business at 1250 Connecticut Avenue, N.W., Washington, D.C. 20036, and CTIA was conducting its business at all times relevant herein through its agents, servants, and/or employees and represented the safety in the use of WHHPs to the Plaintiff Christopher J. Newman and to cellular telephone owners and users in Baltimore City, Maryland and elsewhere in this State.

12.    At all times relevant to this Complaint, the Defendant, Telecommunication Industry Association (hereinafter referred to as "TIA"), is the trade association existing under the laws of the District of Columbia, having its principal place of business in Washington, D.C., and CTIA was conducting its business at all times relevant herein through its agents, servants, and/or employees and represented the safety in the use of WHHPs to the Plaintiff Christopher J. Newman and to cellular telephone owners and users in Baltimore City, Maryland and elsewhere in this State.

9

13.    Defendant, ABC Corporation (hereinafter referred to as "ABC") represents other corporations, partnerships, limited liability companies, and/or other business entities which have or may have had a formal or casual business affiliation or ownership interest with one or more of the names defendants, as well as, other corporations or business entities, such as but not limited to, component manufacturers and suppliers, whose identities are at present unknown, that otherwise participated with the names Defendants in the wrongdoing described in this Complaint. The named defendants are large complex corporations tiered with a system of complex interlocking corporations, partnerships, distributors, component manufacturers, and other business entities which in many cases operate under many trade names which makes identification difficult without discovery thereby requiring the necessity of an "ABC" Corporation defendant(s). Once the identity of these other corporations or business entities is established, this Complaint will be amended to name the additional wrongdoers as parties.

14.    Defendant John Doe (hereinafter referred to as "Doe") represents an individual or individuals whose identities are at present unknown, otherwise participated with the named Defendants in the wrongdoing described in this Complaint. Once the identity of these other individuals is established, this Complaint will be amended to name the additional wrongdoers as parties.

## FACTS COMMON TO ALL COUNTS

15.    On or about the year 1992, Plaintiff, Newman commenced using, and continued to use until sometime after March, 1998, new WHHPs manufactured and sold by MOTOROLA, a model commonly referred to by the public as "the brick", other MOTOROLA model WHHPs and latter the WHHP model known as the "Piper."

16.    NEWMAN is a 41-year-old neurologist, who is permanently and totally disabled. In addition, NEWMAN suffers from excessive fatigue, visual impairment, memory problems, psychological and emotional stress, brain cancer and trauma associated with the multiple brain surgeries and a brain cancer and is otherwise injured. NEWMAN'S condition is not expected to improve and is terminal.

17.    NEWMAN was diagnosed with brain cancer in March 1998. The work-up revealed the presence of a mass lesion in the right tempero-occipital region, which was diagnosed as cancerous brain tumor.   Newman has undergone multiple surgeries. The initial craniotomy was in March 1998, and subsequent craniotomies in April and December 1998, and two (2) more in March of 1999. He also suffers from CFS leaks with poor wound healing, bacterial meningitis, developed complications related to wound healing, and other complications.  He has undergone radiation therapy, chemotherapy and other therapies.

18.    NEWMAN is the father of three children, Kelly E. Newman, age 10, Joshua D. Newman, age 8, and Katelyn C. Newman, age 6.  He had been practicing medicine in the field of neurology, until his medical condition caused him to be totally disabled and unable to work and to close his medical practice.

19.    NEWMAN'S life and Newman's wife's life are plagued with the results of the cancer and the associated results of the brain tumor, and NEWMAN's other disabilities. NEWMAN is cognizant of the fact that his condition will worsen and his life expectancy is relatively very short.

20.    After March 1998, NEWMAN ceased using his WHHP's, and had he known such usage would have caused a brain tumor and/or aggravated an existing tumor, or could have caused illness he would have never used the WHHPs  and/or would have ceased using said phones earlier, had he not been misled by the information and publications circulated by the Defendants.  At all relevant times, the Plaintiff used his WHHPs in the intended way and in the manner intended by the Defendants and a manner foreseeable by the Defendants.

21.    At all times relevant, MOTOROLA manufactured and/or supplied and/or offered for sale and sold intrastate, interstate, and to foreign commerce, WHHPs in which the transmission antenna emitted the WHHPs radio waves referred to as radio frequency radiation (hereinafter referred to as "RFR") and was part of the unit into which the user speaks and listens is in close proximity to the user's head.

22.    MOTOROLA'S and the other Defendants' WHHPs' technology employ RFR at a specific wave frequency to transmit voice messages via an antenna located on the phone. WHHPs operate at between 800 to 1900 megahertz (MHz) and either emit either analog or digital signals.  Since 1984 the Defendants conducted research into the health effect of RFR and based on that information they knew or should have known that the WHHPs produced high levels of RFR.

12

23. The Defendants knew or should have known that the use of RFR frequency in WHHPs to be defective, unreasonably dangerous, hazardous and that it was foreseeable that they would cause injury.

24. The Defendants researchers and engineers have known at all times relevant that RFR energy is absorbed and/or penetrates deeply into biological tissue such as the human head and brain in the WHHPs and that RFR can have a serious biological impact on the WHHPs user. The Defendants failed to inform the Plaintiff Newman, their customers, and the general public through warnings, mailings, advertisements or any other means that the RFR's can cause cancer, and other injuries.

25. The Plaintiff Newman, customers of the Defendants, and the general public were and continued to be misled and deceived by the Defendants into believing that these WHHPs operated at power levels too low to cause adverse health effects.

26. Defendants were in control of the design, assembly, platform for usage, manufacture, marketing and sales of WHHPs have been widely advertised by the Defendants as safe.

27. The Defendants at all times relevant were aware about the potential high level of radiation for WHHPs to cause cancer; and other injuries. Defendants were aware of the clinical observations that many patients' brain tumors were located in an area where RFR from the wireless phone's antenna would be deposited. The hypotheses were derived in part from studies available to the Defendants.

28. The Defendants, using these conclusions, along with a myriad of other scientific studies, clinical observations, and hypothesis by noted scientists and engineers, misled both

13

public officials and the public into believing these WHHPs could in no way cause biological

harm to the user, and that there should be no alarm.

29.    Defendants under public pressure funded a twenty-seven million dollar surveillance

and research effort in hopes of proving that WHHPs were safe and not a health threat. This

Research project failed to prove the safety of the WHHPs.

30.    In late 1994, researchers reported on their observation that rats exposed to

microwaves similar in intensity to those radiating from wireless phone antenna appeared to

experience single strand DNA breakage as a result of the exposure. The following year reports

were published suggesting double strand DNA breaks in the same exposure scenario.

Researchers had adapted the traditionally *in vitro* single cell gel assay in an *in vivo* situation.

These findings had not been validated, but certainly the Defendants had a clear obligation that

wireless phone might be suspect to biological damage.

31.    In 1997, researchers were reporting biological effects in rats exposed head first to

wireless phone mediated RFR, these studies though inclusive, represented controlled study

showing biological effects from RFR exposure that were not heat induced.

32.    The WTR wireless phone industry funded program funded by the Cellular

Telecommunications Industry Association, which is supported by the companies that produce

WHHPs and its communications infrastructure, began to disseminate its findings in 1998 and

1999, much to the dismay of the wireless phone industry. The industry stopped future funding of

the program funded by the Defendants which provides a database on the adverse effects of RFR

and  Defendants negligently and wrongfully discontinued the research.

14

33.    Defendants, members of the Cellular Communication Industry Association, have negligently and wrongfully continued to maintain that WHHPs were safe even though the studies proved otherwise.

34.    The Plaintiffs allege that the Defendants intentionally, negligently and wrongfully reported that the WHHPs were safe and that there was no danger from high levels of RFR.

35.    Even though the Defendants were aware of the increasing demand for WHHPs and wireless service, they failed to conduct adequate testing and manipulated the results of other testing.

36.    The Defendants were aware of the results of numerous studies outlining the biological risk associated with WHHPs. Nevertheless, the Defendants failed to appraise the Plaintiff Christopher J. Newman, their customers, and the public that WHHPs poise a biological risk.  Defendants have also failed to adequately warn the public of the biological risks associated with wireless phone use.

37.    Research conducted by the Defendants and research paid for directly by the Defendants has repeatedly shown that the Defendant's have and continue to manipulate science to the detriment of consumers by failing to reveal all relevant findings and by selectively withholding important public health information from the public and there Plaintiff which information would have caused Plaintiff and other prudent potential Plaintiffs to cease using their WHHPs in the manner intended by the Defendants.

38.    The Defendants have actively encouraged the increased use of WHHPs while knowing the potential biological risks associated with their use.

15

39.     The product warnings in effect during the period relevant to this Complaint were both substantively and graphically wholly inadequate to alert the consumer with the risk associated with wireless phone use.

40.     As a result, the public has been grossly under-informed and misinformed regarding the biological risks associated with wireless phone usage.

41.     Defendants have never fully and adequately warned the public about the risk of biological damage such as but not limited to, brain tumors, cancer, or genetic damage in human blood and/or that the risk of injury can differ with the amount of use and the sensitivity of the user.

42.     Defendants have actively encouraged the use of WHHPs thereby increasing their sales and profits.

43.     At all times relevant, Defendants, themselves, or by use of others, did manufacture, create, design, test, label, package, distribute, supply, market, sell, advertise, and/or otherwise distribute products and services related to WHHPs in Baltimore City, the State of Maryland, and elsewhere in the United States, as well as, WHHPs owners and users throughout its service areas, and as to some Defendants, nationally, and internationally.

44.     The Defendants did business in the Baltimore City and the State of Maryland, performed services in Baltimore City and the State of Maryland and made contracts to be performed in whole or in part in Baltimore City and the State of Maryland, and/or manufactured, tested, sold, offered for sale, supplied or placed in the stream of commerce, or, in the course of business, materially participated with others in so doing, the sale of WHHPs and cellular service.

16

45.    Defendants knew or should have known these WHHPs to be defective, unreasonably dangerous and hazardous, foreseeably causing injury to the Plaintiff Newman as described herein, and committed and continue to commit tortuous and other unlawful acts in Baltimore City and the State of Maryland.

46.    At all times relevant, the Defendants, themselves, or by use of others, did manufacture, create, design, test, label, package, distribute, supply, market, sell, promote, advertise, conduct research and otherwise conducted business and distribution in Baltimore City and the State of Maryland, WHHPs.

47.    Defendants' strategy has been to aggressively market and sell these products and its related service by misleading and misinforming potential users about the products and by failing to protect users from serious dangers, which Defendants knew or should have known to result from use of these products.

48.    Defendants widely and successfully marketed WHHPs in Baltimore City, the State of Maryland, other states, and to some Defendants, nationally and internationally.  Defendants undertook an advertising blitz extolling the virtues of WHHPs in order to induce widespread use of the product.  The marketing campaign consisted of advertisements on television, radio, the Internet, promotional literature to be placed in the printed media, in other advertising media, and other promotional materials to be provided to potential users.

49.    The advertising program, as a whole, by affirmative misrepresentations and omissions, falsely and fraudulently sought to create the image and impression that the use of WHHPs was safe with no potential for biological harm to the user.

17

50.    Defendants purposefully downplayed and understated the health hazards and risks associated with WHHPs. These Defendants, through promotional literature, deceived potential users of WHHPs by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants falsely and fraudulently kept relevant information from potential wireless phone users and minimized user concern regarding the safety of these products and services.

51.    In particular, in the materials produced by Defendants, they falsely and fraudulently misrepresented a number of facts regarding WHHPs, including the following:

    a.    The presence of adequate testing of RFR and potential biological effects on wireless phone users.

    b.    The adverse potential health effects that may be caused by their product.

52.    WHHPs use throughout the United States is estimated at about 90 million users, and that, on information and belief, is in excess of 400 million worldwide.

53.    Defendants failed to publish adequate precautionary statements warning consumers as more information about possible adverse effects became available.


## COUNT ONE - STRICT PRODUCT LIABILITY - FAILURE TO WARN


The Plaintiffs hereby incorporate by reference as if fully set forth in the above paragraphs and further allege as follows:

18

54.     Defendants are manufacturers and/or suppliers of WHHPs and services and are engaged in the design, manufacture, and sale of WHHPs.

55.     The WHHPs manufactured and/or supplied by Defendants were placed in the stream of commerce and sold by the Defendants in a defective and unreasonably dangerous condition in that the design of the hand held wireless phone was such that failed to include a proper warning regarding all possible adverse health effects associated with the use of WHHPs and the comparative severity of such adverse effects; and/or the warnings given did not accurately reflect the scope or severity of the effects.

56.     The WHHPs reached Plaintiff without any substantial change in its condition and was in that same condition at the time of the injury hereafter alleged.

57.     The WHHPs manufactured and/or supplied by Defendants were unaccompanied by proper warnings regarding all possible adverse health effects associated with the use of WHHPs and the comparative severity of such adverse effects; and/or the warnings given did not accurately reflect the scope or severity of the effects.

58.     Defendants failed to perform adequate testing which would have shown that WHHPs possessed serious potential harmful effects with respect to which full and proper warnings, accurately and fully reflecting systems, scope and severity should have been made, with respect to the use WHHPs.

59.     Defendants also failed to effectively warn users that numerous other methods of WHHPs were available, such as but not limited to, a headset or speaker phone adapter should be first line and/or used as the exclusive method of use.

19

60.    The WHHPs manufactured or supplied by Defendants were defective due to

inadequate post-marketing warning or instruction because, after the manufacturer knew or should

have known of the risk of injury from their use, and failed to provide adequate warnings to users

or consumers of the product and continued to aggressively promote the product.

61.    As a direct and proximate result of the defective and unreasonably dangerous

condition of the relevant products due to the failure to warn, as manufactured and/or supplied by

Defendants; Plaintiff, Newman, has suffered permanent and total disability; has undergone

multiple craniotomy surgeries, has developed complications related to wound healing, has

undergone radiation, and chemotherapy. Plaintiff, Newman, suffers from excessive fatigue,

visual impairment, some memory problems, and psychological and emotional stress, all arising

as debilitating effects of brain cancer and trauma associated with the brain surgery and brain

tumor. The Plaintiff's condition is terminal.

62.    As a further direct and proximate result of the defective and unreasonably dangerous

condition of the relevant products due to the failure to warn, as manufactured and/or supplied by

Defendants; Plaintiff, Newman, has been injured in health, strength and activity and suffered

injuries to body and mind, the exact nature and extent of which will be determined; Plaintiff,

Newman, has sustained economic loss, including loss of earnings and diminution or loss of

earning capacity, in an amount to be determined; Plaintiff, Newman, requires reasonable and

necessary health care, attention and services and has incurred and will incur medical, health,

incidental and related expenses; and/or has been otherwise injured.

20

63.    At all times relevant hereto, the Defendants actually knew of the defective nature of their products as herein set forth and continued to design, manufacture, market and sell their products so as to maximize sales and profits at the expense of public health and safety. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of foreseeable harm to the Plaintiff, Newman, The Plaintiff, Newman, therefore, is entitled to punitive damages.

WHEREFORE, Plaintiff, Newman, and Newman's wife, by and through theirs attorneys, Joanne L. Suder and The Suder Law Firm, P.A. brings this action against the Defendants and claims, compensatory damages in excess of Twenty Million Dollars ($20,000,000.00) and punitive damages in excess of Seven Hundred Million Dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

## COUNT TWO - STRICT PRODUCT LIABILITY

The Plaintiffs hereby incorporate by reference as if fully set forth in the above paragraphs and further allege as follows:

64.    The WHHPs manufactured and/or supplied by the Defendants was placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in

21

that the foreseeable risks exceeded the benefits associated with the design, engineering, and function.

65.    Alternatively, the WHHPs manufactured and/or supplied by the Defendants were defective in design, engineering, or function, in that, when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect.

66.    The WHHPs manufactured and/or supplied by the Defendants were defective due to inadequate warning or instruction because the manufacturers knew or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

67.    The WHHPs manufactured and/or supplied by the Defendants were defective due to inadequate warning and/or inadequate testing.

68.    The WHHPs manufactured and/or supplied by the Defendants were defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from RF radiation, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

69.    As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants; Plaintiff, Newman, has suffered permanent and total disability; has undergone multiple craniotomy surgeries, has developed complications related to wound healing, has undergone radiation, and chemotherapy. Plaintiff, Newman, suffers from excessive fatigue,

22

visual impairment, some memory problems, and psychological and emotional stress, all arising

as debilitating effects of brain cancer and trauma associated with the brain surgery and brain

tumor. The Plaintiff's condition is terminal.

70.     As a further direct and proximate result of the defective and unreasonably dangerous

condition of the relevant products due to the failure to warn, as manufactured and/or supplied by

Defendants; Plaintiff, Newman, has been injured in health, strength and activity and suffered

injuries to body and mind, the exact nature and extent of which will be determined; Plaintiff,

Newman, has sustained economic loss, including loss of earnings and diminution or loss of

earning capacity, in an amount to be determined; Plaintiff, Newman, requires reasonable and

necessary health care, attention and services and has incurred and will incur medical, health,

incidental and related expenses; and/or has been otherwise injured.

71.     At all times relevant hereto, the Defendants actually knew of the defective nature of

their products as herein set forth and continued to design, manufacture, market and sell their

products so as to maximize sales and profits at the expense of public health and safety.

Defendants' conduct exhibits such an entire want of care as to establish that their actions were a

result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of

foreseeable harm to the Plaintiff, Newman,. The Plaintiff, Newman, therefore, is entitled to

punitive damages.

WHEREFORE, Plaintiff, Newman, and Newman's wife by and through their attorneys,

Joanne L. Suder and The Suder Law Firm, P.A. brings this action against the Defendants and

claims, compensatory damages in excess of Twenty Million Dollars ($20,000,000.00) and

punitive damages in excess of Seven Hundred Million Dollars ($700,000,000.00) and such other

and further relief as the Court may deem necessary and proper.

## COUNT III
## NEGLIGENCE

Plaintiff adopts and incorporates all the preceding paragraphs above) of the Complaint

and further allege as follows:

72.    Defendants were negligent in that they failed: to exercise ordinary care in the

manufacture, sale, testing, quality assurance, quality control and/or distribution, advertising and

warning of WHHPs into the stream of commerce; to properly accompany its product or services

with warnings regarding all possible adverse biological effects associated with the use of

WHHPs and training for the users on the best method of using WHHPs; to conduct adequate pre-

clinical and clinical testing and post-marketing surveillance to determine the safety of wireless

hand held; and failure to use due care in designing and manufacturing WHHPs so as to avoid

aforementioned risks to individuals.

73.    Defendant were further negligent in that they failed to adequately test and/or warn

about the reaction or interaction of one or more of the component parts in WHHPs, nor warn that

exposure RF radiation in close proximity to the head could cause genetic damage to human

blood cells, and could result in brain tumors and cancer.

74.    Despite the fact that Defendants knew or should have known that wireless phone use

caused unreasonable, potentially dangerous biological effects which many users would be

24

exposed to, Defendants continued to market wireless phone use thereof to consumers, including Plaintiff, Newman, when there were safer alternative methods of telephone communication.

75.    As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff Newman has suffered permanent and total disability; has a terminal illness, has undergone multiple surgeries, undergone radiation and chemotherapy, bacterial meningitis, and other complications. Furthermore, Plaintiff sustained economic loss, emotional and psychological stress, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and requires reasonable and necessary health care, attention and services and has incurred and will incur medical, health, incidental and related expenses; and/or has been otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages in excess of Seven Hundred million dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein; of the Complaint and further allege as follows:

76.     Defendants expressly warranted that WHHPs were safe and well accepted by researchers studies.

77.     The Defendants express warranties constitute affirmations of fact, promises, and descriptions regarding the quality and safety of their products and services.

78.     Defendants breached this warranty in that they failed to eliminate or minimize health hazards or possible health hazards from the radio waves by redesigning the WHHPs or by adequate training in the best method of using a wireless hand held phone.

79.     WHHPs do not conform to express representations because WHHPs are not safe and have high levels of serious potential biological effects, including life-threatening effects.

80.     As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff Newman has suffered permanent and total disability; has a terminal illness, has undergone multiple surgeries, undergone radiation and chemotherapy, bacterial meningitis, and other complications. Furthermore, Plaintiff sustained economic loss, emotional and psychological stress, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and requires reasonable and necessary health care, attention and services and has incurred and will incur medical, health, incidental and related expenses; and/or has been otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages

in excess of Seven hundred million dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY

Plaintiff adopts and incorporates all the preceding paragraphs of the Complaint and further allege as follows:

81.    At the time Defendants marketed, sold and distributed WHHPs for use by Plaintiff, Newman, Defendants knew of the use for which WHHPs was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

82.    Plaintiff, Newman, reasonably relied upon the skill and judgment of Defendants as to whether wireless phone use thereof was of merchantable quality and safe and fit for its intended use and did properly use his WHHPs in the intended and foreseeable manner.

83.    The Defendants breached said warranty by the wireless hand held phone not being fit for its intended use, because the products were and are unreasonable dangerous and unfit for ordinary and reasonable amount of use as described above.

84.    As a direct and proximate result of the defective and unreasonably dangerous Condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff Newman has suffered permanent and total disability; has undergone multiple surgeries, undergone radiation and chemotherapy, bacterial meningitis, and other

27

complications. Furthermore, Plaintiff sustained economic loss, emotional and psychological

stress, including loss of earnings and diminution or loss of earning capacity, in an amount to be

determined; and requires reasonable and necessary health care, attention and services and has

incurred and will incur medical, health, incidental and related expenses; and/or has been

otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim

Compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages

in excess of Seven hundred million dollars ($700,000,000.00) and such other and further relief as

the Court may deem necessary and proper.

## COUNT VI
## PRODUCTS LIABILITY - NEGLIGENCE

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein;

of the Complaint and further allege as follows:

86.    Defendants owed the Plaintiffs the duty of ordinary professional care in the testing,

manufacture, and sale of its WHHPs in one or more of the following respects, the Defendants

failed to meet that duty by: not adequately or properly testing WHHPs for health hazards

associated with exposure to radio frequency radiation emitted by said phones; by producing,

manufacturing, or selling WHHPs that emit harmful or potentially harmful RFR without

adequate protection from harm to the user; by failing to provide a warning to the public,

28

purchasers, or users, of the dangerous or potentially hazardous emitted by the wireless hand held phone what biological results may occur; by negligently supplying a defective product, directly or indirectly, to the public, purchasers, or users, including the Plaintiff Newman.

87.    The Defendants products were defectively designed due to inadequate warnings, and at the time the products or services traveled into the stream of commerce, the Defendant knew or should have known enough facts to put a reasonable manufacturer, supplier, or service organization on notice regarding the dangers and/or potential dangers of selling, supplying, or marketing the WHHPs.

88.    As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff Newman has suffered permanent and total disability; has undergone multiple surgeries, undergone radiation and chemotherapy, bacterial meningitis, and other complications. Furthermore, Plaintiff sustained economic loss, emotional and psychological stress, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and requires reasonable and necessary health care, attention and services and has incurred and will incur medical, health, incidental and related expenses; and/or has been otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of twenty million dollars ($20,000,000.00), punitive damages in excess of

seven hundred million dollars ($700,000,000.00) and such other and further relief as the Court

may deem necessary and proper.

## COUNT VII
## PRODUCTS LIABILITY – STRICT LIABILITY

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein

of the Complaint and further allege as follows:

89.    At the time the WHHPs left the possession of the Defendants and were purchased, the

Defendants:

a.    had not adequately or properly testing WHHPs for health hazards associated with

exposure to radio frequency radiation emitted by said phones;

b.    produced, manufactured, or sold WHHPs that emitted harmful or potentially

harmful RFR without adequate protection from harm to the user;

c.    produced, manufactured, or sold WHHPs that were defective in that Defendants

failed to provide adequate warnings to the public, purchasers, or users, including the Plaintiff

Newman, of the dangerous or potentially hazardous RF radiation being emitted by the WHHPs;

warnings which could have prevented the damages as stated herein;

c.    produced, manufactured, or sold WHHPs that were defective in that Defendants

failed to provide adequate warnings to the public, purchasers, or users including the Plaintiffs,

that use of Defendants WHHPs aggravates or accelerates tumors and/or may cause genetic

30

damage to human blood cells, including but not limited to, the increase in the number of cells with micro nuclei associated with RFR exposure which can lead to the proliferation of damaged blood cells and the ability of the human blood cells to repair broken DNA.

     d.     produced, manufactured, or sold WHHPs that were defective in that Defendants failed to provide adequate warnings to the public, purchasers, or users including the Plaintiff, Newman, that use of Defendant's WHHPs increases the risk of cancer or injury from existing cancer; nor did Defendant provide a safety device or shield

     90.     At all times relevant herein, the Defendants had a duty to manufacture and supply a reasonably safe product, nor a product that was dangerous beyond the expectations of ordinary consumers.

     91.     At the time the WHHPs left the Defendants possession the WHHPs were unreasonably dangerous to the Plaintiff and the Defendants had a less dangerous alternative or modification, which was economically feasible.

     92.     As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff Newman has suffered permanent and total disability; has undergone multiple surgeries, undergone radiation and chemotherapy, bacterial meningitis, and other complications. Furthermore, Plaintiff sustained economic loss, emotional and psychological stress, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and requires reasonable and necessary health care, attention and services and has

31

incurred and will incur medical, health, incidental and related expenses; and/or has been otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages in excess of Seven hundred million dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

## COUNT VIII
## CIVIL TORT CONSPIRACY

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein; of the Complaint and further allege as follows:

93.    At all relevant times, the Defendants conspired together to falsely misrepresent to the public, including the Plaintiff Newman, that WHHPs were proven safe, which induced the public, including the Plaintiff, to retain and/or continue using the WHHPs.

94.    These representations were made and disseminated by Defendants and/or defendants' agents and/or those otherwise acting in concert with Defendants with the intentions to fraudulently misrepresent the WHHPs as safe.

95.    The conduct of Defendants described and incorporated herein was unfair, deceptive, or misleading, or constituted an improper concealment, suppression or omission of a material fact and, thus, tortuous in character, in that Defendants: fraudulently and deceptively withheld from the public, information and material fact that Defendants had adequately researched the

32

health related consequences of the use of WHHPs; fraudulently and deceptively failed to

adequately warn the public, purchasers, or users, including the Plaintiff, Newman,, of the

material fact that the WHHPs were defective and that users are at risk of biological illnesses;

fraudulently and deceptively failed to adequately warn the public, purchasers, or users, including

the Plaintiff; failed to adequately label the WHHPs and bring the defect to the attention of the

public and/ or Plaintiff; deceptively misrepresented that there are no potential adverse health

effects associated with the use of WHHPs.

96.    These material misrepresentation and omissions were made with the intent and in

such manner that the Plaintiff Newman relied upon them with respect to the retention and/or use

of his wireless hand held phone, and as such, these misrepresentations and omissions were

committed as a conspiracy between the Defendants against the public, including the Plaintiff.

97.    The aforesaid misrepresentations and omissions were overt acts made by Defendants

in furtherance of the conspiracy against the public, including the Plaintiff, into believing that the

scientific database with respect to the potential and adverse short term and long term

consequences of using WHHPs is broad and conclusive as to safety when in fact it is not.

98.    As a direct and proximate result of the defective and unreasonably dangerous

condition of the relevant products due to the failure to warn, as manufactured and/or supplied by

Defendants, Plaintiff Newman has suffered permanent and total disability; has undergone

multiple surgeries, the initial craniotomy was in March 1998, and subsequent craniotomies in

April and December 1998, and two (2) more in March of 1999; has suffered from CFS leaks

33

with poor wound healing, bacterial meningitis, and has developed complications related to wound healing, has undergone radiation, and chemotherapy. In addition, Plaintiff, Newman, suffers from excessive fatigue, visual impairment, some memory problems, and psychological and emotional stress, all arising as debilitating effects of brain cancer and trauma associated with the brain surgery and brain tumor. Furthermore, Plaintiff Newman's condition is not expected to improve and for which medical care is necessary; and further, the prognosis is that he will die as a result of the cancer and the associated results of the tumor.

99.    As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff Newman has suffered permanent and total disability; has undergone multiple surgeries, undergone radiation and chemotherapy, bacterial meningitis, and other complications. Furthermore, Plaintiff sustained economic loss, emotional and psychological stress, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and requires reasonable and necessary health care, attention and services and has incurred and will incur medical, health, incidental and related expenses; and/or has been otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages in excess of Seven hundred million dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

34

## COUNT IX
## CIVIL BATTERY

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein; of the Complaint and further allege as follows:

100.    Defendants' aforementioned conduct and/or omissions, by and their respective agents, servants, employees, and/or any entity or affiliate thereof inflicted harmful or offensive contact to the Plaintiff, Newman, by exposing him to radio frequency radiation (RFR) that they knew to cause biological changes in adverse health effects.

101.    Defendants' by and their respective agents, servants, employees, and/or any affiliates or otherwise related entities, thereof intended to bring and inflict harmful or offensive contact to the Plaintiff, Newman,

102.    As a direct and proximate result of Defendants' aforesaid conduct and/or omissions, Plaintiff, Newman, has sustained personal injuries and emotional distress, and is likely to sustain additional such injuries and distress in the future; and has incurred medical expenses, loss of income, and other losses and is likely to incur additional such expenses and losses in the future.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages in excess of

35

Seven hundred million dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

## COUNT X
## VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein; of the Complaint and further allege as follows:

103.    Section 13-408 of the Maryland Consumer Protection Act, Md. Com. Law Code Ann. §§ 13-101 et seq., authorizes the Plaintiff, Newman, to bring an action to recover for injury or loss sustained as a result of a practice prohibited by the Act.

104.    By engaging in the conduct described above, the Defendants have violated Sections 13-301(1), (2), (3) and (9) of the Consumer Protection Act by, among other things:

(a) Engaging in unfair and deceptive trade practices as defined in Section 13-301(1) by making false and misleading oral and written statements that had, and have, the capacity, tendency or effect of deceiving or misleading Maryland consumers;

(b) Engaging in unfair or deceptive trade practices as defined in Section 13-301(2)(i) by making representations that their products have an approval, characteristics, ingredient, use or benefit which they do not have, including, but not limited to, their statements concerning the health consequences of the use of these WHHPs;

36

(c) engaging in unfair or deceptive trade practices as defined in Section 13-301(3) by failing to state material facts the omission of which deceived or tended to deceive, including, but not limited to, facts relating to the health consequences relating to the use of these WHHPs; and

(d)    engaging in unfair or deceptive trade practices as defined in Section 13-301(9)(i) through their deception, fraud, misrepresentation and knowing concealment, suppression and omission of material facts with the intent that Maryland consumers rely upon the same in connection with the use of WHHPs.

105.    To remedy these violations, it is requested that this Court award damages for the injuries and losses sustained by the Plaintiff, Newman, and reasonable attorneys fees pursuant to §13-410 of the Consumer Protection Act.

106.    As a direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff, Newman, has suffered permanent and total disability; has undergone multiple surgeries, the initial craniotomy was in March 1998, and subsequent craniotomies in April and December 1998, and two (2) more in March of 1999;, has suffered from CFS leaks with poor wound healing, bacterial meningitis, and has developed complications related to wound healing, has undergone radiation, and chemotherapy. In addition, Plaintiff, Newman, suffers from excessive fatigue, visual impairment, some memory problems, and psychological and emotional stress, all arising as debilitating effects of brain cancer and trauma associated with

37

the brain surgery and brain tumor. Furthermore, Plaintiff, Newman's condition is not expected to improve and for which medical care is necessary; and further, the prognosis is that he will die as a result of the cancer and the associated results of the tumor.

107.    As a further direct and proximate result of the defective and unreasonably dangerous condition of the relevant products due to the failure to warn, as manufactured and/or supplied by Defendants, Plaintiff, Newman, has been injured in health, strength and activity and suffered injuries to body and mind, the exact nature and extent of which will be determined; Plaintiff, Newman, has sustained economic loss, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and Plaintiff, Newman, requires reasonable and necessary health care, attention and services and has incurred and will incur medical, health, incidental and related expenses; and/or has been otherwise injured.

WHEREFORE, Plaintiff brings this action against the Defendants and claim compensatory damages in excess of Twenty million dollars ($20,000,000.00), punitive damages in excess of Seven hundred million dollars ($700,000,000.00) and such other and further relief as the Court may deem necessary and proper.

### COUNT XI
### UNFAIR AND DECEPTIVE TRADE PRACTICES

Plaintiff adopts and incorporates all the preceding paragraphs as if set forth fully herein; of the Complaint and further allege as follows:

108.    Plaintiffs contend that Defendants made various statements and representations to the public, and therefore Plaintiffs, such as but not limited to, the safety of WHHPs, the expertise and knowledge of Defendants, and other fraudulent claims, misrepresentations, and omissions. These statements and representations were intended to manipulate the public and therefore Plaintiffs into believing that the WHHPs were safe and furtherance of their illegal scheme.

109.    Defendants engaged in unfair and deceptive trade practices as defined in the Annotated Code of Maryland, Commercial Law section 13-301, in that they made false and misleading oral statements and/or representations to the public and therefore Plaintiffs, which statements had the capacity, tendency or effect of deceiving or misleading Plaintiffs, in that they made representations that their WHHPs were safe, and in that they failed to state material facts, which failure deceives or tends to deceive.

110.    As a consequence of these unfair and deceptive trade practices of Defendant, the Plaintiffs reasonably relied on these representations and was deceived and damaged as set forth above.

WHEREFORE, pursuant to Commercial Law, Md. Code Ann. Section 13-408, Plaintiffs brings this cause of action for damages against the Defendants and claim compensatory damages in the amount of Twenty Million Dollars $20,0000.000 and punitive damages in the amount Seven Hundred Million $700,000,000.00, plus costs and such other and further relief as the Court may

## COUNT XII
## FRAUD

39

Plaintiffs, hereby incorporate by reference as if fully set forth herein the above paragraphs of the Complaint and further allege as follows:

111.    Defendant made false representations of material facts to the public and there Plaintiffs. The Defendants led the public and therefore Plaintiffs to believe under false pretenses that the WHHPs were safe and did not emit an unsafe level of RFR.

112.    Defendants knew these representations were false or they made these representations with such reckless disregard for the truth that the falsity can be imputed on them.

113.    Defendants were acting at all times relevant within the scope of their business for profit.

114.    Defendants deceived the public and therefore Plaintiffs for their own benefit. This conduct by the Defendants as described herein above was intentional, malicious, evil/ or extreme and outrageous conduct, and was designated and calculated to cause Plaintiffs harm. As a direct and/or proximate result of Defendants conduct, Plaintiffs was caused to suffer and will continue to suffer severely financially, emotionally, psychologically, and medically as set forth above.

115.    Defendants made these false misrepresentations in order to defraud the public and therefore the Plaintiffs.

116.    Plaintiffs justifiably relied on the false representations made by the Defendants and as a direct result suffered damages.

40

WHEREFORE, Plaintiffs bring this cause of action against the Defendants and claim compensatory in excess of Twenty Million Dollars $20,000.000,00, punitive damages in excess of Seven Hundred Million $700,000,000.00 plus costs and such other and further relief as the Court may deem necessary and proper.

## COUNT XIII
## CLAIM FOR DAMAGES AND LOSS OF CONSORTIUM

Plaintiffs adopts and incorporates all the preceding paragraphs as if set forth fully herein; of the Complaint and further allege as follows:

117.    Plaintiffs, alleges that they enjoyed a very close relationship with each other, each furnishing to the other love, emotional support, companionship, pride and on-going happiness.  It is alleged that the untimely, painful and tragic terminal illness of Newman, they occasioned enormous and unremitting grief and sorrow, mental anguish, emotional pain and suffering, loss of society, companionship, comfort, consortium, protection, care, attention, advice, counsel, training, guidance and other losses and/or damages, including, but not limited to, expenses, pecuniary loss, loss of services, and medical expenses, and was otherwise damaged and injured, all in the past, present and continuing into the future.

118.    Plaintiffs allege that their loss has suffered represents a permanent tragedy in their life from which she will never recover and for which claim is made.

119.    Plaintiffs were caused to suffer and will continue to suffer sorrow, mental anguish, grief, loss of society, loss of companionship, comfort, guidance, loss of reasonably expected income, services, protection, care, suffer financially, suffer severely emotionally and psychologically, and all other items of general nature associated with a husband wife relationship, and all in the past and into the future.  It is alleged that as a result of Defendants' intentional, malicious, outrageous, improper and unprofessional conduct that they further damaged Plaintiffs to such a great extend that it is not foreseeable that they will ever recover.

120.    Each of the damages and injuries described herein occurred without any negligence on the part of the Plaintiffs contributing thereto.

WHEREFORE, Plaintiffs bring this cause of action against the Defendants and claim compensatory in excess of Twenty Million Dollars $20,000.000.00, punitive damages in excess of Seven Hundred Million $700,000,000.00 plus costs and such other and further relief as the Court may deem necessary and proper.


## COUNT XIV
## PUNITIVE DAMAGES

Plaintiff, Newman, incorporates by reference all preceding paragraphs as if fully set forth here and further alleges as follows:

121.    The conduct by the Defendants as described herein above was intentional, done with actual malice, done with ill will and evil motive and/or was extreme and outrageous and was designed, calculated and intended to harm Plaintiff, Newman, to inflict financial harm and

devastation upon the Plaintiff, Newman, and to inflict emotional distress upon the Plaintiff, Newman,

122.     As a direct and/or proximate result of Defendants' intentional, malicious, evil and/or extreme and outrageous conduct, Plaintiff, Newman, was caused to suffer and will continue to suffer medically, severely financially, suffer severely emotionally and psychologically, all in the past and into the future.  It is alleged that as a result of Defendants' intentional, malicious, outrageous, improper and unprofessional conduct that they further damaged Plaintiff, Newman, to such a great extend that it is not foreseeable that they will ever recover.

123.     Each of the damages and injuries described herein occurred without any negligence on the part of the Plaintiff, Newman, contributing thereto.

124.     Defendant s' conduct was intentional, done with malice, ill will, intent to injure, evil motive, and fraud, was extreme and outrageous thereby justifying the imposition of punitive damages against Defendants. Punitive damages are warranted against Defendants to prevent such conduct from occurring in the future.

WHEREFORE, Plaintiffs bring this cause of action against the Defendants and claim compensatory in excess of Twenty Million Dollars $20,000.000.00, punitive damages in excess of Seven Hundred Million $700,000,000.00 plus costs and such other and further relief as the Court may deem necessary and proper.

Joanne L. Suder
The Suder Law Firm, P.A.
210 East Lexington Street
Suite 100
Baltimore, Maryland  21202
(410) 727-8177
Attorneys for Plaintiffs

## PRAYER FOR JURY TRIAL

Plaintiffs respectfully request a jury trial in this matter.

Joanne L. Suder
The Suder Law Firm, P.A.
210 East Lexington Street
Suite 100
Baltimore, Maryland  21202
(410) 727-8177
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __4th__ day of __August__, 2000, a copy of the

foregoing Complaint and Prayer for Jury Trial  was mailed first class, postage prepaid, to:

44

Motorola Incorporated
Resident Agent
The Corporation Trust
300 E. Lombard Street
Baltimore, Maryland 21202

Verizon Maryland Incorporated
1 East Pratt Street
Constellation Place
Baltimore, Maryland 21202

Bell Atlantic Corporation
State of Maryland Department of Assessment & Taxation
301 W. Preston Street, Room 801
Baltimore, Maryland 21201

Bell Atlantic Mobile, Incorporated
Resident Agent
Corporation Trust
300 E. Lombard Street
Baltimore, Maryland 21202

Southwestern Bell Mobile Systems, Incorporated
State of Maryland Department of Assessment & Taxation
301 W. Preston Street, Room 801
Baltimore, Maryland 21201

Washington/ Baltimore Cellular Limited PA
State of Maryland Department of Assessment & Taxation
301 W. Preston Street, Room 801
Baltimore, Maryland 21201

SBC Communications Incorporated
C.T. Corporation Systems
350 N. Saint Paul Street
Dallas, Texas 75201

Cellular Telecommunication Industry Association
1250 Connecticut Avenue, NW

45

Washington, DC 20036


Telecommunication Industry Association
Resident Agent
Mathew T. Kranz
1201 Pennsylvania Avenue, NW
Suite 315
Washington, D.C. 20044



Joanne L. Suder

46